CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
APR 16 2013
JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| TRAVIS LEON DAVIDSON, | ) |
| Petitioner, | ) Civil Action No. 7:12-cv-80525 |
| | ) Criminal Action No. 7:11-cr-00044 |
| v. | ) MEMORANDUM OPINION |
| UNITED STATES OF AMERICA, | ) By: Hon. Glen E. Conrad |
| | ) Chief United States District Judge |
| Respondent. | ) |

The petitioner, Travis Leon Davidson, proceeding pro se, has filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. The government has responded to the petitioner's motion, contending his claims are without merit. For the reasons stated below, the court will deny Davidson's petition.[1]

I. **Background**

On November 14, 2011, Davidson pled guilty to three counts of an eleven count indictment. He was convicted of one count of conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1343, and two counts of aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1) and (2). The charges stemmed from a scheme in which Davidson and his co-conspirators used illegally obtained federal employer identification numbers to defraud a payroll services company. In carrying out the scheme, an individual would contact CBIZ Benefits and Insurances Services, Inc. (CBIZ) claiming to represent businesses which wanted to begin using CBIZ's payroll services. The individual would supply CBIZ with the names, employer identification numbers, and bank account information of its purported employees, and request

---

[1] In reviewing Davidson's case, the court has considered the most recent materials filed by Davidson and labeled as a motion to amend his petition. (Docket No. 118.)

that CBIZ disburse payroll amounts into the individuals' bank accounts. When CBIZ later sought to recover the amount by debiting the companies' accounts, its claims were rejected due to insufficient funds.

Davidson was sentenced on April 9, 2012 to 61 months on the wire fraud count and 24 months on each identity theft count. The 24 month sentences were to run concurrently with each other and consecutively to the 61 month term. At the time of sentencing, Davidson was in federal custody serving time for a similar wire fraud scheme for which he had been convicted in South Carolina. Because of the similarity in the two convictions, this court ordered that Davidson's 85 month term run concurrent to the time he was serving on the South Carolina conviction.

Davidson filed several post-sentencing motions and letters seeking to amend his sentence and the judgment against him. Finding that the court lacked jurisdiction over these claims, the motions were dismissed on May 18, 2012. Davidson then filed this motion to vacate, set aside, or correct his sentence. In his petition and supporting brief, Davidson argues that his counsel, Robert Rider, was ineffective by (1) failing to argue the issue of the petitioner's alleged diminished mental capacity; (2) failing to require the government to turn over evidence allegedly in its possession; (3) failing to secure a downward departure based on his assistance to the government; (4) failing to argue that the petitioner's criminal history category overstated his prior conduct; and (5) failing to argue that the petitioner's prison sentence was unreasonable.

II.   **Discussion**

To prove a claim for ineffective assistance of counsel, a defendant must satisfy both prongs of the two-prong test articulated in Strickland v. Washington, 466 U.S. 668 (1984). The defendant must first demonstrate that counsel's representation fell below an objective standard of

reasonableness. This requires overcoming the "strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance . . . ." Id. at 689. Second, the defendant must show he was prejudiced by counsel's deficient performance. To do this, the defendant must prove "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

### A. Failure to argue the defendant's poor mental health

The petitioner's first claim is that his counsel was ineffective in failing to sufficiently argue that his diminished mental health qualified him for a downward departure under § 5K2.13 of the United States Sentencing Guidelines. The defendant also suggests that counsel should have argued for the completion of a mental health evaluation to determine whether he was fit to stand trial or enter a guilty plea.

Davidson's arguments fail to satisfy either prong of Strickland. Although it appears true that the defendant has a history of significant health issues, including mental health problems, the court was made aware of this history during the change of plea hearing and at sentencing. Mr. Rider, petitioner's counsel, offered evidence in mitigation on this issue at Davidson's initial sentence hearing.[2] This included the testimony of Davidson himself, who recounted his history of mental and emotional problems. Mr. Rider questioned Davidson on the effects of his health problems and the treatment he was receiving. The questioning helped inform the court of Davidson's mental condition and to consider what role it should play in his sentencing. It thus cannot be said that counsel's performance in this regard fell outside the "wide range of reasonable professional assistance." Strickland, 466 U.S at 689.

---

[2] The sentencing hearing at which Davidson testified was held on March 6, 2012. It was continued until to March 28, 2012 to deal with a matter not at issue in the § 2255 petition.

Even if the petitioner were able to show that Rider's performance was deficient, he is unable to prove that he was prejudiced. The court was made aware of Davidson's mental health conditions on several different occasions. First, the court questioned the defendant during his plea colloquy, finding that he was mentally and physically capable of entering an informed plea. During the hearing, Davidson advised the court that he suffered from depression, anxiety, and bipolar disorders. He also noted that he was satisfied with the medical treatment he was receiving while in custody. Second, as mentioned above, Davidson testified on his own behalf at the initial sentencing hearing, outlining his mental and emotional health issues. Third, Davidson submitted a sentencing memorandum to the court, in which he further explained his history of physical and mental health problems. This included a request that he be granted a departure under § 5K2.13 for his allegedly diminished mental capacity. Fourth, the probation office addressed Davidson's mental health in its presentence report, noting the petitioner's history of mental and emotional health problems, including his statements that he was repeatedly sexually abused by an older family member when he was a child, as well as the mental health struggles of members of his family. Throughout all of the proceedings in this case, Davidson has repeatedly acknowledged his wrongful behavior and accepted full responsibility for his actions. He cannot now argue for the first time that he suffered from such a reduced mental capacity that he was unable to "(A) understand the wrongfulness of the behavior comprising the offense or to exercise the power of reason; or (B) control behavior that the defendant knows is wrongful." U.S.S.G. § 5K2.13 cmt. n. 1.

In short, the defendant is unable to show that he was prejudiced by Rider's failure to specifically argue for a downward departure under § 5K2.13. The court was made aware of the petitioner's mental health conditions and considered them in fashioning an appropriate sentence.

Had Rider requested a departure based on Davidson's mental health, it would not have been granted; thus, the court cannot conclude that Rider's failure to move for a downward departure constitutes ineffective assistance of counsel.

### B.    Failure to require the government to turn over evidence

Davidson's second claim is that his counsel was ineffective in failing to require the government to turn over to the defendant a letter allegedly taken from Davidson at the Federal Correctional Institution in Williamsburg, South Carolina, as well as an audio recording of Davidson made at some unknown time. As to the letter, Davidson indicates that while he was incarcerated at FCI Williamsburg, he mailed the government certain documents relating to his role in the charged offenses. One such document was a letter to Davidson from Lakeavius Kirkland, a co-defendant in the case. Davidson contends that in the letter, Kirkland acknowledges that he and his girlfriend were the parties actually responsible for the illegal conduct. Davidson claims that his counsel's failure in making sure that the government turned over this allegedly exculpatory evidence negatively impacted the outcome of his case. Regarding the audio recording, Davidson does not specify its origin or content, stating merely that it may have been associated with a polygraph test administered to him.

In <u>Brady v. Maryland</u>, 373, 83, 87 (1963), the Supreme Court held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution." To establish a <u>Brady</u> violation, a defendant must: "(1) identify the existence of evidence favorable to the accused; (2) show that the government suppressed the evidence; and (3) demonstrate that the suppression was material." <u>United States v. King</u>, 628 F.3d 693, 701-02 (4th Cir. 2011). Evidence is "material" if "there is a reasonable probability that, had the

evidence been disclosed to the defense, the result of the proceedings would have been different. A reasonable probability is a probability sufficient to undermine the confidence in the outcome." United States v. Bagley, 473 U.S. 667, 682 (1985). A defendant who has pled guilty may raise a Brady violation in the context of an ineffective assistance of counsel claim if the violation resulted in an involuntary or uncounseled plea. See Mollohan v. United States, 2012 WL 6825319, *4 (S.D. W.Va. Nov. 28, 2012) ("A guilty plea will be deemed involuntary if it is entered without knowledge of material information withheld by the prosecution.") (citing Sanchez v. United States, 50 F.3d 1448, 1453 (9th Cir. 1995).

Davidson's claim on this issue fails to satisfy either prong of the Strickland test. First, he cannot show that Rider's performance was deficient in failing to require the government to turn over the letter or audio recording. The record shows that defendant's counsel and the government agreed to a joint discovery and inspection request that the court granted on August 9, 2011. Pursuant to the joint request, the court ordered that the government make available to the defendant all relevant materials in the possession or control of the government, the existence of which was known or could reasonably become known to the government's attorney. There is nothing in the record to suggest that Rider knew specifically of the letter or the recording, or had any reason to believe they would not be turned over along with the rest of the government's discovery materials. Counsel in this case followed a standard procedure utilized by the government and defense counsel in cases before this court, whereby the parties jointly agree to a court order setting the parameters of discovery and requiring the government to hand over all materials relevant to the case. As such, it cannot be said that Rider's performance fell below an "objective standard of reasonableness." Strickland, 466 U.S. at 689.

The defendant was also not prejudiced by the government's alleged failure to turn over the materials. First, regarding the letter, the court construes the defendant's arguments as suggesting that the letter indicated his lack of involvement in the offense compared to his co-defendants. However, the record of the case, including the defendant's repeated statements throughout the prosecution, belies his current position. From the outset, beginning with his guilty plea and continuing through sentencing, the defendant reiterated his responsibility for the charged offense. At his guilty plea hearing, the defendant acknowledged that he had decided to plead guilty because he was in fact guilty. Plea Transcript, at 34-35. At Davidson's sentencing hearing, he admitted to being the ringleader of the operation. 03/06/2012 Realtime Tr. at 18. This contradicts his current suggestion that the government withheld from him a letter indicating his lack of involvement in the charged offense. Prior to his motion to vacate, the defendant never suggested the possibility of exculpatory evidence. Indeed, even in pleadings to the court on the instant matter, Davidson continues to accept responsibility for his conduct. See Br. in Support of Motion to Vacate, at 2. In light of this, the court cannot see how the defendant was prejudiced by counsel's alleged error in failing to force the government to turn over the letter. The defendant does not suggest his plea was made involuntarily or unwillingly, and continues to acknowledge that his plea of guilty was based on the fact that he is guilty of the charged offense.

Additionally, the defendant could not have been prejudiced by the government's refusal to turn over information of which the defendant was already aware. Fullwood v. Lee, 290 F.3d 663, 686 (4th Cir. 2002) (holding that "information that is not merely available to the defendant but is actually known by the defendant would fall outside of the Brady rule"); see also United States v. Diaz, 922 F.2d 998, 1007 (2nd Cir. 1990) ("[T]here is no improper suppression within the meaning of Brady where the facts are already known by the defendant.") Davidson

7

obviously admits to being aware of the letter and its exculpatory content in that he originally possessed the letter and mailed it to the government. Davidson thus cannot show that he was prejudiced by the government's alleged failure to turn over information of which he was already aware.

As for the audio recording, Davidson fails to make a sufficiently particularized showing about the materials he claims were wrongfully withheld. The petitioner obliquely references some sort of audio recording of his voice that was in the possession of the government. He does not attempt to indicate what the recording would uncover or how it would have affected his decision to plead guilty. See Robinson v. United States, 2012 WL 3782552, *8 (N.D. W.Va. Aug. 31, 2012) ("Robinson has not even attempted to make a particularized allegation as to the substance of this allegedly withheld evidence and whether there is a reasonable probability that the evidence would have led to an acquittal."). As such, the court concludes that the petitioner has failed to meet his burden of establishing that he was prejudiced by his attorney's failure to procure the evidence in question.

### C. Failure to secure a downward departure based on the defendant's assistance to the United States

Davidson's next claim is that his counsel was ineffective in failing to procure a downward departure based on Davidson's assistance to the government. The defendant appears to acknowledge that his counsel could not have been ineffective for failing to argue for and obtain a substantial assistance motion filed on behalf of the government. This is because it is well-settled that the decision to file such motions rests solely in the prerogative of the prosecution. See United States v. Butler, 272 F.3d 683, 686 (4th Cir. 2001) ("If the government is in control of the motion, then it will have the maximum ability to elicit the sort of cooperation

that is crucial to obtaining valid convictions. Thus, unless the government's failure to file a substantial assistance motion is 'based on an unconstitutional motive,' such as racial or religious animus, or is 'not rationally related to any legitimate Government end,' district courts have no authority to review a prosecutor's refusal to file a substantial assistance motion and grant a remedy.") (quoting Wade v. United States, 504 U.S. 181, 185-86 (1992)); see also 18 U.S.C. § 3553(e) (empowering district courts, "upon motion of the Government," to impose sentences below the statutory minimum "to reflect a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense"); U.S.S.G. § 5K1.1 (permitting district courts to impose sentences below the applicable statutory minimum "[u]pon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense"). Instead, Davidson's position appears to be that his counsel should have secured a downward departure based on his cooperation with the government under U.S.S.G. § 5K2.0. Section 5K2.0 allows for departures for conduct that the United States Sentencing Commission has "failed to consider a relevant circumstance in its formulation of specific offense characteristics or other aspects of the Guidelines." United States v. Barber, 93 F.3d 1200, 1210 (4th Cir. 1996) vacated, 119 F.3d 276 (4th Cir. 1997). Some courts have concluded that § 5K2.0 encompasses situations in which defendants have provided significant assistance to the authorities by offering cooperation which does not involve investigating or prosecuting another person. For example, in United States v. Khan, 920 F.2d 1100, 1107 (2nd Cir. 1990), the Court held that the defendant's contribution in protecting the safety of a confidential informant was the kind of assistance that could be considered as a basis for a departure absent a government motion. The Court explained that exception to § 5K1.1's motion requirement exists "where the defendant offers information

regarding actions he took, which could not be used by the government to prosecute other individuals." Id. Similarly, in United States v. Sanchez, 927 F.2d 1092 (9th Cir. 1991), the Court held that although a defendant's assistance in a civil forfeiture proceeding was outside § 5K1.1's scope because the assistance was not aimed at prosecuting another person, the district court was not prevented from considering a departure under § 5K2.0. See also United States v. Truman, 304 F.3d 586, 592 (6th Cir. 2002) (declining to decide in the first instance whether a defendant's cooperation in improving his former employer's security measures fell within an acceptance of responsibility reduction pursuant to § 3E1.1(a) & (b), or a separate reduction not specifically contemplated by the guidelines but outlined in § 5K2.0).

In this case, however, the defendant has failed to articulate a justification for why his cooperation should have qualified him for a departure under § 5K2.0. The defendant simply asserts that he risked his life for the government and that he separated himself from his co-defendants and their actions. The court cannot consider such nonspecific assertions as meritorious grounds for a departure. The defendant has not shown why his cooperation would differ from that which would potentially yield a substantial assistance motion filed by the government pursuant to § 5K1.1. Nor does he explain how his remorse for his actions or his effort to cut ties with his co-defendants is outside the scope of conduct covered by an acceptance of responsibility reduction issued under § 3E1.1(a) & (b) He thus fails to raise a kind of mitigating circumstance that was not "adequately taken into consideration by the Sentencing Commission." § 5K2.0. Accordingly, the defendant has not shown that his counsel substantially erred in failing to move for a departure based on the defendant's cooperation with the authorities, or that any such error was prejudicial to the outcome of his case.

### D. Failure to argue that Davidson's criminal history category was overrepresented

Davidson next argues that his counsel was ineffective for failing to argue for and secure a downward departure based on the alleged overrepresentation of the defendant's criminal history. Section 4A1.3(b)(1) of United States Sentencing Guidelines states that a downward departure may be warranted "[i]f reliable information indicates that the defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes." In the presentence investigation report prepared by the Probation Office, it was determined that Davidson's criminal past represented nine criminal history points, resulting in a criminal history category of IV. The nine points were comprised of: two points for a 2006 state conviction for forgery and fraudulent check writing; two points for a 2008 state conviction for presenting a false claim for insurance payment; three points for a 2010 federal conviction for conspiracy to commit mail and wire fraud; and two points because the instant offense occurred while the defendant was on probation for the 2008 offense. § 4A1.1(d). The defendant has numerous arrests for the use of fraudulent checks, for which he was accorded no criminal history points.

Davidson fails to challenge the accuracy of any of these convictions or calculations, and instead merely offers as argument that he is not a violent offender and presents a slight risk of recidivism. However, Davidson's past convictions clearly indicate that he was not entitled to a departure under § 4A1.3(b)(1). Davidson has twice been charged and convicted in federal court for wire fraud conspiracies having a similar modus operandi. Moreover, the fact that he was convicted of the instant offense while on probation for a fraudulent check scheme weighs against his claims that he is unlikely to repeat offend. Davidson's arguments in support of his eligibility

for a departure were meritless at the time of sentencing and remain meritless today. Accordingly, the defendant has failed to establish error or prejudice under Strickland, and his claim for relief on this ground will be denied.

### E. Failure to argue that Davidson's sentence was unreasonable

Lastly, Davidson argues that the disparity between his sentences and those of his co-defendants indicates that his sentence is unreasonable under 18 U.S.C. § 3553(a)(6). This section counsels sentencing courts on the importance of avoiding "unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." In making his argument, Davidson fails to account for the fact that his applicable guideline range, while greater than those of his co-defendants, included an increase for his leadership role in perpetrating the crime. U.S.S.G. § 3B1.1(c). As mentioned above, Davidson acknowledged his role as the head of the conspiracy. This establishes a substantial difference in conduct that the court had to consider in fashioning an appropriate sentence. Furthermore, Davidson's petition ignores the fact that one co-defendant, Candra Wickham, received a downward departure based on a substantial assistance motion filed by the United States; and that the second co-defendant, Lakeavius Kirkland, was found to have a criminal history category I, three levels lower than the defendant. Davidson has not shown that his counsel committed any error failing to secure precisely the same sentence for Davidson as his co-defendants, and his motion on this final ground must also be denied.

## III. Conclusion

For the foregoing reasons, the defendant has failed to adequately state a claim for ineffective assistance of counsel as to each and all of his claims. As such, the court will enter an order granting the government's motion to dismiss and denying Davidson's motion to vacate.

Additionally, because Davidson has failed to demonstrate "a substantial showing of the denial of a constitutional right," the court will deny a certificate of appealability. 28 U.S.C. § 2253(c).

The Clerk is directed to send certified copies of this memorandum opinion and the accompanying order to Davidson and to all counsel of record.

ENTER: This 15th day of April, 2013.

*/s/*
Chief United States District Judge